<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

<table>
<tr>
<td>CHAMBERS OF<br><strong>SUSAN D. WIGENTON</strong><br>UNITED STATES DISTRICT JUDGE</td>
<td>MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903</td>
</tr>
</table>

February 17, 2026

Benjamin D. Salvina
Karpf, Karpf & Cerutti, P.C.
8 Interplex Drive
Suite 210
Featerville-Trevose, PA 19053
*Counsel for Plaintiff*

Jocelyn A. Merced
Ogletree Deakins Nash Smoak & Stewart PC
10 Madison Avenue
Suite 400
Morristown, NJ 07960
*Counsel for Defendant*

## <u>LETTER OPINION FILED WITH THE CLERK OF THE COURT</u>

   Re:  *Flores v. Brink's, Inc.*, Civ. No. 25-5383 (SDW) (MAH)

Counsel:

   Before this Court is Defendant Brink's, Inc.'s ("Defendant" or "Brink's") Motion to Dismiss, (D.E. 9), Plaintiff Jose Flores's ("Plaintiff") Complaint, (D.E. 1), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  For the reasons set forth herein, Defendant's Motion is **DENIED**.

## I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

   This Court writes only for the parties and accordingly limits its discussion of the factual and procedural background to only the facts pertinent to the instant decision.

### A.  Factual Background

This case centers around Defendant's termination of Plaintiff's employment on July 25, 2024. Up to that day, Plaintiff had been employed with Defendant for over twenty-five years.[1] (D.E. 1 ("Compl.") ¶ 22.) Defendant, an American cash handling company, employed Plaintiff as an armored trucks driver. (*Id.* ¶¶ 9, 14, 18.)

Plaintiff claims that after acquiring Dunbar, Defendant switched from a three-men to a one-man armored truck, which resulted in violations of the Federal Motor Carrier Safety Administration's ("FMCSA") rules and regulations.[2] (*Id.* ¶¶ 25, 27–28.) Plaintiff alleges that Defendant attempted and forced him to violate several of the FMCSA's regulations by having him drive: (a) after fourteen consecutive hours after coming on-duty following ten consecutive hours off-duty, (b) more than eleven hours during the fourteen-hour workday, and (c) without first taking ten consecutive hours off-duty. (*Id.* ¶ 29.) Towards the end of his employment, Plaintiff refused to report to work without the proper rest time. (*Id.* ¶ 31.) Rather than choosing to adhere to the FMCSA's regulations following Plaintiff's complaints to Defendant's management, Plaintiff claims management ignored his concerns and "continued to try to force him to drive under unsafe and hazardous conditions." (*Id.* ¶ 33.)

On July 25, 2024, Defendant terminated Plaintiff from his employment, citing distracted driving as the cause. (*Id.* ¶ 36.) More specifically, according to Defendant, the video monitoring system in Plaintiff's truck "captured and reported that he picked up a handheld device and held it up to his face while driving a company vehicle." (D.E. 9-1 ("Mov. Br.") at 5.) However, Plaintiff submits that this proffered reason was merely pretextual. (Compl. ¶¶ 35–37.) Plaintiff admits to using his phone but claims this was at management's instruction or with management's knowledge, given that the global positioning system ("GPS") in Defendant's trucks were unreliable. (*Id.* ¶¶ 38–39.) According to Plaintiff, Defendant knew it was common practice for its drivers to use their phones for navigation purposes. (*Id.* ¶ 40.) Thus, Plaintiff claims Defendant chose to selectively enforce its policy against phone usage against him as a pretext for his termination. (*Id.* ¶ 42.)

Plaintiff submits he was truly fired for "complaining about Defendant's violations of the FMSCA regulations and/or his refusal to operate equipment under unsafe/hazardous conditions," particularly since he had no history of progressive discipline with Defendant. (*Id.* ¶¶ 19, 44.) He also notes that after Defendant acquired Dunbar, there was "a noticeable and gradual effort to push out and/or terminate older employees." (*Id.* ¶ 47.) To carry out this effort, Plaintiff claims Defendant selectively enforced its rules and policies against older employees. (*Id.*) Thus, Plaintiff, who is fifty-nine years old, submits his termination is yet another instance of selective enforcement, particularly when younger employees have committed worse infractions than him but were not terminated. (*Id.* ¶¶ 45, 47, 51–52.)

### B. Procedural History

---

[1] Plaintiff was employed with Dunbar Armored, Inc. ("Dunbar") for approximately twenty years. (*See* Compl. ¶¶ 16–18.) In 2018, Brink's acquired Dunbar. (*Id.* ¶ 16.)

[2] According to Plaintiff, because he drove trucks weighing over 10,001 pounds, Defendant's activities were covered and subject to the Surface Transportation Assistance Act ("STAA"), 49 U.S.C. § 31105 *et seq.* and the FMCSA's rules. (Compl. ¶ 24.)

On October 15, 2024, Plaintiff timely filed a retaliation complaint with the United States Department of Labor ("DOL") vis-à-vis the Occupational Safety and Health Administration ("OSHA") for violations of the STAA. (Compl. ¶ 6.) Consistent with 49 U.S.C. § 20109(d)(3), upon the Secretary of Labor's failure to issue a final order within 210 days of receipt of Plaintiff's OSHA complaint, Plaintiff filed suit in this Court on May 23, 2025.[3] (D.E. 1.) The Complaint alleges the following causes of action: retaliatory termination in violation of the STAA, 49 U.S.C. § 31105 (Count I); wrongful termination and retaliation in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1 *et seq.*, and New Jersey common law (Counts II and III); and age discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Counts IV and V). (Compl. at 9–12.)

On July 22, 2025, Defendant moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). (D.E. 9.) The parties timely completely briefing. (D.E. 14–16.)

## II.   <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The pleading should "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). The analysis involves a two-step approach. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). First, the Court parses between the factual and legal elements of a claim, treating "all of the complaint's well-pleaded facts as true," but disregarding any legal conclusions. *Id.*; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Second, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

When a plaintiff pleads factual content that enables the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged," a claim has facial plausibility. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556

---

[3] An employee may bring "an original action at law or equity for de novo review in the appropriate district court of the United States," if the Secretary of Labor fails to issue a final decision within 210 days after the filing of the employee's complaint. 49 U.S.C. § 20109(d)(3).

U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.* The Court considers "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Belichick*, 605 F.3d at 230 (citation omitted).

## III.    DISCUSSION

### A.  STAA Claim

Section 405 of the STAA "protects employee 'whistle-blowers' by forbidding discharge, discipline, or other forms of discrimination" by an employer following an employee's complaint about or refusal to operate motor vehicles that do not meet the statute's applicable safety standards. *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 258 (1987). Recognizing that transportation industry employees are best able to detect safety violations but could face adverse consequences for cooperating with enforcement agencies, Congress enacted Section 405 to "encourage employee reporting of noncompliance with safety regulations governing commercial motor vehicles" and provide them express protection against retaliation. *Id.*

Section 405 prohibits employers from discharging, disciplining, or discriminating against certain employees for engaging in protected activities as defined by the statute. 49 U.S.C. § 31105(a)(1). An employee claiming retaliatory discharge "must present a prima facie case demonstrating by a preponderance of the evidence that: (i) they engaged in protected activity, (ii) the employer knew of the protected conduct, (iii) their employer took an unfavorable employment action against them, and (iv) the protected activity was a contributing factor to the employer's adverse employment action." *Greatwide Dedicated Transp. II, LLC v. U.S. Dep't of Labor*, 72 F.4th 544, 553 (4th Cir. 2023); *see also Weatherford U.S., L.P. v. U.S. Dep't of Labor, Admin. Bd.*, 68 F.4th 1030, 1039–40 (6th Cir. 2023) (explaining that Congress's 2007 amendment to the STAA incorporated the preponderance of the evidence standard "set forth in the whistleblower provision of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 42121(b)(2)(B)"); 49 U.S.C. § 31105(b) ("All complaints initiated under this section shall be governed by the legal burdens of proof set forth in section 42121(b)."). Once an employee makes a prima facie case, the employer must show "by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of" the employee's behavior. 49 U.S.C. § 42121(b)(2)(B); *Greatwide*, 72 F.4th at 553–54.

Defendant moves to dismiss Plaintiff's retaliation claim pursuant to the STAA on two grounds. (Mov. Br. at 11–12.) First, Defendant argues Plaintiff has not pleaded the first element of a retaliation claim with the requisite specificity given his failure to include specific instances of when he was scheduled to work more hours than permitted or without the requisite rest time. (*Id.*) Second, Defendant maintains that Plaintiff's Complaint is devoid of factual allegations supporting the causation element. (*Id.* at 12.) In opposition, Plaintiff argues his Complaint identifies instances he complained to management based on his reasonable belief that Defendant was violating 49 C.F.R. § 395.3 and that said violation posed a threat of injury to himself and the public. (D.E. 15 ("Opp. Br.") at 18–20.) Plaintiff maintains he also sufficiently pleads causation given the temporal

4

proximity between his last written complaint and his termination date and his allegations of selective enforcement of Defendant's phone policy. (*Id.* at 20–22.)

At the outset, Plaintiff's Complaint falls within the STAA's purview. Plaintiff claims the trucks he drove in the course of his employment weighed over 10,001 pounds and Defendant does not contest that allegation. *See* 49 U.S.C. § 31101(1)(A) (defining a "commercial motor vehicle" as a self-propelled vehicle used on highways in commerce principally to transport cargo where the vehicle "has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater").

Plaintiff has also stated a plausible claim of retaliation under the STAA. His Complaint details both oral and written complaints voiced with management over his belief that 49 C.F.R. § 395.3 ("Regulation 395") was being violated. For example, Plaintiff alleges he voiced verbal complaints throughout June and July 2024 to his supervisor, Antonee James, and to Defendant's Human Resources Manager, Lisa Duffy. (Compl. ¶¶ 20–21, 32.) He also claims he filed written complaints with James on June 21 and July 19 and 20, 2024. (Compl. ¶ 32.) Plaintiff identifies the particular ways in which he was forced to violate the STAA, essentially claiming he was not given the required rest times following fifteen-hour shifts and drove more hours than permissible within a 14-hour work period, culminating in his decision to refuse to report to work. (*Id.* ¶¶ 29, 31.) These facts, taken together, support the inferences that: (1) Plaintiff's operation of Defendant's trucks would result in violation of Regulation 395 and (2) a reasonable individual in Plaintiff's position would conclude that Defendant's failure to comply with Regulation 395 poses a real danger of accident, injury, or serious impairment to health. *See* 49 U.S.C. § 31105(a)(2) (explaining 49 U.S.C. § 31105(a)(1)(B)(ii) requires an employee to demonstrate their apprehension was reasonable and that he or she was unable to obtain correction of the hazardous condition); *Koch Foods, Inc. v. Sec'y, U.S. Dep't of Lab.*, 712 F.3d 476, 481–83, 86 (11th Cir. 2013) (clarifying that the reasonable belief requirement applies to 49 U.S.C. § 31105(a)(1)(B)(ii) but not to subsection 31105(a)(1)(B)(i)).

Additionally, Plaintiff provides facts as to why he deemed his termination over Defendant's phone policy to be pretextual. The Complaint sets forth sufficient factual allegations about how Defendant's phone policy was not strictly enforced, particularly because management knew the navigation systems in their trucks were unreliable and management had instructed its employees to use their phones. (Compl. ¶¶ 35–40.) Plaintiff also notes the temporal proximity between the date of his last written complaint—July 20, 2024—and his termination on July 25, 2024. The relevant inquiry here is not whether the protected activity was the sole factor, rather whether it was a *contributing* factor. *See Feldman v. L. Enf't Assocs. Corp.*, 752 F.3d 339, 348 (4th Cir. 2014) ("A contributing factor is any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." (quoting *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 476 n.3 (5th Cir. 2008)). The timing between these two events is sufficient to withstand a motion to dismiss. *See Feldman*, 752 F.3d at 348 (characterizing temporal proximity as a "significant factor" upon a circumstantial showing of causation, unless severed by the passage of time or an intervening event). Plaintiff's Complaint plausibly pleads causation. Moreover, Plaintiff's Complaint adequately pleads a retaliation claim under the STAA.

**B. CEPA Claims**

Plaintiff asserts retaliation and wrongful termination claims pursuant to CEPA. To establish a claim under CEPA, a plaintiff must demonstrate: (1) a reasonable belief that the employer's conduct violated a law, regulation, or a clear mandate of public policy; (2) that he or she performed "whistle-blowing" activity under the act; (3) an adverse employment action by the employer; and (4) a causal connection between elements two and three. *Munenzon v. Peters Advisors, LLC*, 553 F. Supp. 3d 187, 203 (D.N.J. 2021).

Defendant raises the same arguments it raised to dismiss Plaintiff's STAA claim. (Mov. Br. at 14 ("Plaintiff's CEPA claim (Count II) should be dismissed for the same reasons set forth above with respect to Plaintiff's STAA retaliation claim.").) Thus, for the reasons stated above, Defendant's motion to dismiss Plaintiff's claims under CEPA is denied.

### C. Common Law Claims

Count III of Plaintiff's Complaint asserts a wrongful termination claim pursuant to New Jersey common law as declared in *Pierce v. Ortho Pharmaceutical Corporation*, 417 A.2d 505 (N.J. 1980). Defendant contends Plaintiff cannot allege retaliation under both CEPA and the common law and that by asserting a CEPA claim, has waived his right to seek relief under *Pierce* and its progeny. (Mov. Br. at 15.) However, "courts have generally held that 'the CEPA waiver does not attach until after the completion of discovery,' so that 'plaintiff has a meaningful opportunity to gather facts and choose his remedy based on information.'" *Myers v. Advanced Stores Co.*, No. 19-18183, 2020 WL 2744632, at *5 (D.N.J. May 27, 2020) (quoting *Broad v. Home Depot U.S.A., Inc.*, 16 F. Supp. 3d 413, 417 (D.N.J. 2014)). Accordingly, Plaintiff's common law claim may proceed at this juncture.

### D. Age Discrimination Claims

Lastly, Plaintiff alleges age discrimination in violation of the ADEA and NJLAD under a disparate treatment theory. These claims are governed by the same standard such that this Court will only discuss Plaintiff's ADEA claim. *DeJoy v. Comcast Cable Communications Inc.*, 968 F. Supp. 963, 979 (D.N.J. 1997). A plaintiff must demonstrate the following elements to make a prima facie age discrimination claim: (1) that he is over forty years old, (2) that the employer took an adverse employment decision, (3) that the plaintiff was qualified for the position in question, and (4) that the employer replaced the plaintiff with "another employee who was sufficiently younger so as to support an inference of discriminatory motive." *Willis v. UPMC Children's Hospital of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).

Defendant argues that Plaintiff's Complaint lacks factual allegations giving rise to an inference of age discrimination. (Mov. Br. at 17.) Defendant also contends the Complaint lacks sufficient comparator evidence. (*Id.* at 18.) Plaintiff's Complaint describes "a noticeable and gradual effort to push out and/or terminate older employees" in the year preceding his termination. (Compl. ¶ 46.) As with his STAA and CEPA theories of liability, Plaintiff submits that the distracted driving rationale put forth by Defendant was mere pretext and relevant to his age discrimination claim, adding that "several younger employees" committed "far worse infractions" but were not terminated. (Compl. ¶ 49–52.) These allegations, coupled with Plaintiff's lack of progressive discipline history, adequately support an inference of discriminatory motive. The

6

remainder of Plaintiff's Complaint contains the facts necessary to plead the remaining elements of an age discrimination claim.  (Compl. ¶¶ 17–19, 22, 45, 49.)  Plaintiff's claims under the ADEA and NJLAD may proceed.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, this Court **DENIES** Defendant's Motion to Dismiss.

<u>      /s/ Susan D. Wigenton      </u>
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:    Parties
       Michael A. Hammer, U.S.M.J.